UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:26-cv-00950-SSS-SSC | Date | March 10, 2026 |
|---|---|---|---|
| Title | *Prabhjot Singh Sohal v. Warden et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 2]**

Before the Court is petitioner Prabhjot Singh Sohal's ex parte application for a temporary restraining order. ["Application," Dkt. No. 2]. The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in relation to the Application, the Court **GRANTS** the Application.

**I.   BACKGROUND**

On February 27, 2026, petitioner Prabhjot Singh Sohal ("Petitioner") filed a verified petition for writ of habeas corpus. ["Petition," Dkt. No. 1]. Petitioner raises the following grounds for relief: (1) violation of the Fifth Amendment right to substantive due process and (2) violation of the Fifth Amendment right to procedural due process. [*Id*.].

That same day, Petitioner filed the instant ex parte application for a temporary restraining order. [App.]. In support of the Petition, Petitioner filed a declaration by his counsel, Simranjit Kaur ("Kaur Decl.," Dkt. No. 2-3) and several exhibits relevant to the Application (Dkt. Nos. 2-2, 2-3).

On March 2, 2026, the Court ordered the Government to respond by March 3, 2026.  [Dkt. No. 5].  On March 3, 2026, the Government responded, indicating the Government's belief that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) *reconsideration granted in part*, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and *amended and superseded on reconsideration*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  However, given that Petitioner had contact with immigration officials upon entry to the United States, the Court finds he is not a member of the Bond Eligible Class.

## II.     FACTS

Petitioner is a citizen of India.  [Petition ¶ 1].  He entered the United States without inspection on February 25, 2024.  [*Id*.].  Upon entry, he was briefly detained and released on his own recognizance on February 26, 2024.  [*Id*. ¶ 36].  The Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear on August 9, 2024, charging him solely under INA § 212(a)(6)(A)(i).  [Petition, Ex. A].  In June 2024, Petitioner filed his I-589 asylum application.  [*Id*. ¶ 1].  Petitioner has remained in pre-final-order removal proceedings at all relevant times and has no criminal history.  [*Id*. ¶ 7].  Since his release in July 2024, Petitioner has complied with all supervision conditions, appeared for every required ICE appointment, maintained full ATD compliance, and committed no violations.  [*Id*.].  For approximately 21 months, DHS repeatedly determined that physical detention of Petitioner was unnecessary.  [*Id*. ¶ 52].

On July 8, 2025, DHS issued Interim Guidance asserting that certain noncitizens who entered without inspection are categorically subject to mandatory detention under 8 U.S.C. § 1225(b).  [*Id*. ¶¶ 26–33].

On November 14, 2025, Petitioner appeared for a scheduled ICE appointment and was re-detained.  [*Id*. ¶¶ 4, 38, 52].  ICE alleged no violations, no changed circumstances, and no individualized basis for custody.  [*Id*. ¶¶ 39–40].  Petitioner was given no pre-deprivation hearing and no opportunity to contest the legal basis for his re-detention.  [*Id*.]

## III.    LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The

purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the *Winter* factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the *Winter* test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in their favor. *Winter*, 555 U.S. at 20. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction. *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019) ("Given this opportunity for briefing, the Court will instead construe [plaintiff's] request for a TRO as a motion for preliminary injunction.").

//

//

A.     **Likelihood of Success on the Merits**

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr.*, 968 F.3d at 989.  Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights.  [App. at 12–20].  "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects*.*" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens][1], whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'"  *Id*. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

The Supreme Court has recognized that an individual on parole, which is analogous to orders of Release on Recognizance ("ROR") and Alternatives to Detention ("ATD") conditions, has a liberty interest under the Fourteenth

---

[1] This Order uses the term "noncitizenship" in place of "alienage" and "noncitizen" in place of "alien."  The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice.  *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).  Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing."  Chicago Manual of Style Online 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html.  As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'" *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)).  Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice.  *See Alien and Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

Amendment's Due Process Clause requiring "some informal procedural guarantees." *Morrissey v. Brewer*, 408 U.S. 471, 482-83 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation); *Young v. Harper*, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings. *Morrissey*, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." *Gagnon*, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. *Morrissey*, 408 U.S. at 485 (citing *Goldberg v. Kelly*, 397 U.S. 254, 267–271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, *see Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens on RORs under ATD conditions. *See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator*, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").

Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of ROR.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under *Mathews v. Eldridge*, the Court considers three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an extended period. *Morrissey*, 408 U.S. at 482.

Here, Petitioner received his ROR in 2024. [App., Ex. A]. Thus, DHS released Petitioner on ROR for approximately 21 months. [*Id.*] Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during his re-detention—he received no "advance notice, a written explanation, or an opportunity to contest the basis for his arrest." [App. at 8]. Further, "ICE did not make any individualized finding that Petitioner posed a danger to the community or a risk of flight." [*Id.*]. The risk of erroneous deprivation is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." *Zadyvdas*, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The Government's previous decision to release Petitioner on ROR demonstrates that the Government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." *Id*.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

**B.    Irreparable Harm**

Petitioner is suffering irreparable harm because he is likely being detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." *Hernandez*, 872 F.3d at 995. Therefore, Petitioner faces irreparable harm.

**C.    Balance of Equities and Public Interest**

Where the government is the opposing party, the balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm. Therefore, the Court finds that the only reasonable relief is Petitioner's release.

Due to the minimal harm suffered by the Government, the Court will not require security.

## V.   CONCLUSION

For the reasons described above, the Court **GRANTS** the Application. Accordingly, the Court finds Petitioner is entitled to a preliminary injunction and **ORDERS** the Government to release Petitioner from immigration detention forthwith, and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.

**IT IS SO ORDERED.**